Next case is number 4-18-0037, Willie Crouch of the Workers' Compensation Commission Counsel, let me make a receipt. Here, please, the court. This case involves a slip and fall on snow and ice. And the courts in law in Illinois treat slips and falls on snow and ice significantly differently when they are negligence cases versus workers' compensation claims. In a snow and ice case that involves negligence, one looks at the fault of the parties. When you're talking about a workers' compensation claim, fault of the parties is not an issue. You know, that's all true, but here's the question, okay? When the claimant slipped and fell on the snow, she was going to get coffee off the premises at Starbucks, correct? Yep. So she was not leaving the building for a work-related purpose, first of all, was she? Nope. Well, unless you consider that part of the comfort doctrine. But other than the comfort doctrine, you're right. Aside from that. Yep. And you cited some cases, you know, if she was coming into the building at work in the morning, she was leaving the building to go home, I think that's pretty much covered under the case law. Obviously, an employee has to arrive in the morning and has to leave at night, okay? So she's going out for the coffee. Commission finds this did not arise within the course of her employment because she's getting coffee and she slips on the snow. So isn't this to be reviewed under the neutral risk? No. Why not? Well, one, the comfort doctrine. So, for instance, if you look at that Eagle discount case, that guy is on lunch, on premises, playing frisbee. Right, but he's on premises. He was on premises. So under the comfort doctrine, if you leave your place of employment and you want to drive five miles to Burger King for lunch, that's covered because it's under the comfort doctrine? No, because on Eagle, if you look at Eagle discount, that is on premises, and Eagle discount says basically you look at where the main focus is where the incident occurred. So it's on him and not on the employer's premises. Beg your pardon? Did you say that in Eagle the accident happened? It did. Well, here it didn't happen on the employer's premises. Yes, it did. The sidewalk is the employer's premises? Yes. There was testimony in the record that that was part of the employer's premises. If this were not, then I think the commission would have been right, and quite frankly, I wouldn't have taken the case because it would have been you would have used a different test, and that's the whole purpose of this appeal. If it's off premises, you use increased risk from the general public, and that's what you would use in a case where, for instance, somebody leaves the premises and goes to lunch and gets hurt, and you'd use increased risk from the general public. This is on premises, and so the commission applied the wrong test, which is whether or not it arose out of the condition of the premises, and so that's the difference. So anyway, I cite five cases that specifically talk about a condition of the premises. Four of these are snow and ice cases. They all award compensation. One of them is a Supreme Court case, ADM. Two of them are decided on de novo standard, Bryce and Souter. One of them is clearly, no question about it, a public employment situation. One of them I think is, that's the Bicentennial Building in Springfield, which I think they're talking about the Hallett Building, but I'm not positive. That is one of the sites. Yeah, so. Bicentennial, 1918. Yeah, right, and so if you look at it that way, in that record, they cite kind of the wrong street, so I wasn't positive, but I think that's what they're talking about, but anyway. These are all cases where it was on premises, snow and ice fall, and these are compensable because it is a condition of the premises. I want to pin this down. You're saying, well, look, this fall did not occur on the city's premises, on a city sidewalk? It occurred. This occurred, she worked in the city building, the city building downtown here in Springfield, and there is a sidewalk leaving the building. This is not like a public sidewalk where you're walking around the building. This is exiting the building. If you look at the video, she walks out maybe 20 feet. She's still on that exit from the building part of it. It's not like you're just on a general sidewalk. It is on premises. There is testimony. It is on premises. If it were off premises, this case would be terrible. It is on premises. So the purpose for which she leaves the building doesn't matter. Correct. No, the purpose for which she leaves the building is important in your theory. It's personal comfort. I mean, that's your theory. The purpose is very important. Why did she leave the building? It's part of the personal comfort doctrine. That's your thesis. Well, I think, okay, we can argue about my thesis. If he's giving you his thesis, you should probably take it. What's that? If he's giving you his thesis, you should probably take it. Well, I mean, if it wasn't part of the personal comfort doctrine and she was just walking out and she was, for some reason, wasn't going to work or coming from work, then it's not compensable. If it's within the personal comfort doctrine, at least you have an argument for compensability because, you're right, it is a hazard and it's on the employer's premises. I mean, I think either way you analyze this, I think that is accurate. Under the personal comfort doctrine, you look at whether it was on premises. If it's personal comfort, like it was in this case, on premises, it's compensable. So that makes it a solid case. Now, you cited a number of cases, but is it true that in the cases you cited, in all of those cases, the employee was either arriving to work or leaving at the end of their shift? No, I think, well, for instance, Bryce is not. That's one where there's a lady who's working at the courthouse. She's a child support coordinator and she leaves the building and she's coming back to the building, just like this, coming back on the same type of a public-private sidewalk that's owned by the county and she trips and falls on that sidewalk. But there was a hazard, there was a defect in the sidewalk, wasn't there? Yeah. Okay, well, here there's no defect. It's a natural accumulation of snow. Well, the case law all says that snow and ice is a defect or hazardous condition under the law. If you look at ADM, that's what that says. If you look at Morris Harvey, it says that all these cases are snow and ice cases, and they all say it is a condition of the premises that someone slips and falls on snow and ice. And so snow and ice is a condition of the premises, and that's all you look at. You're saying it's a defective condition of the premises. Well, I mean, what I'm saying is you don't have to have, like, messed up concrete, right? That's a defect in my book. These cases are talking about snow and ice. That's right. Snow and ice is a defect. That's my point. That's my point. Yeah, that's what I'm trying to say. That's why you call it a defective condition of the premises. Right. And so snow and ice is a defect, and if it's on premises, it is a condition of the premises. Well, hang on. Did you cite the Dukic case, D-U-K-I-C-H? Opposing counsel cited the Dukic case. So is this a quote from the Dukic case? The dangers created by walking on a snow-covered walkway are dangers to which all members of the public are exposed. These dangers, unlike defects or hazardous conditions located at the work site, are not risks distinctly associated with employment. That's right out of the Dukic case. Yeah, Dukic case. It's not a hazardous condition. The mere fact there's snow and ice on the sidewalk is not of itself a legally hazardous condition because it's an exposure that the members of the public have to confront every day. It's not an employment-related risk. You don't apply greater risk to the general public in on-premises cases. You apply condition of the premises test. That's what the commission did wrong in this case. It applied risk to the general public rather than... It applied a neutral risk analysis which requires qualitative or quantitatively dissimilar to what the general public encounters. Your argument is that it has absolutely nothing to do with this because it is a hazard existing on the premises while she's engaged in personal comfort. If I hit it on the head, is that what you're arguing? That's the personal comfort argument, yes. And the other one is if you're on-premises on snow and ice, the case law is clear that that is a condition of the premises, and that on-premises you use the condition of the premises test. Irrespective of why you've left the premises. That has to be your argument. Right. Well, that's true. I mean, I suppose if you're leaving to go get drunk at a bar, it might be different. But this wasn't that. And so that's why I suppose the comfort doctor comes in because that guy in Eagle was playing Frisbee, right? And that was still on-premises. I hate to bring this up, but according to what I've read, the evidence and the facts of the case, wasn't there a coffee shop in the building? Yeah. There's a coffee shop in the building. But that's what ADM says you don't do is analyze all these, you know, assumption of risk things. And that's what ADM talks about that. And so in ADM, for instance, this lady was coming in, and there's a bar, right? A gate kind of thing. She tried to walk around. And she slipped and fell on the ice on-premises. The Supreme Court said that's compensable because it was a conditioned premises. And the defense tried to say, eh, she did it wrong. If she wouldn't have walked that way, it wouldn't have been. I don't disagree with this personal comfort doctor, and that's well established. I guess what I'm wrestling is where do you draw the line? You know, it gets a little bit slippery, doesn't it, when you leave the premises and you say it's for personal comfort? In this case, it was a cup of coffee. What if it was personal comfort? I need to take a break and go shopping at a sporting goods store. I'm entitled to a break for my personal comfort. You know, how do you draw the line and what falls within the personal comfort doctrine when you leave the premises? Because the case keeps citing nobody left the premises. It might have been Lispy, but they didn't have left the premises. She didn't either. If she left the premises. No, she did. She left to go get a cup of coffee at Starbucks. Well, she didn't make it. It didn't matter. She left the premises. All these cases that I cite are cases where the person is coming to or going from work. Right. Coming to work or going at the end of the day, not leaving for personal comfort. Bryce isn't one where she's leaving for the beginning or the end of the day. But I don't see a distinction between leaving to go home and for personal comfort. I'm sorry. Yes, sir. Finish your point. I'm sorry. That was it. Well, you mentioned Bryce again, but isn't there also the added element that in Bryce, the claimant must still be injured due to demands of her employment? So the fact that it was an injury potentially compensatable on the premises due to a dangerous condition is going for coffee due to demands of your employment. I think that's an extra piece of Bryce you haven't spoken to. I see that as, to me, I look at Bryce. The court decided that de novo and said there's no question of fact. And because she was on company property when she was coming back in, because she made it to the company, that means that you use the test as to whether or not it is a conditioned premises, as opposed to the general public, which is, I think, what people tend to want to do. We will see if there's an increased risk. The cases involving Snow and Ice say you don't use the general public risk. Instead, you use condition of the premises as the test. And had it not been for that, I mean, that's what the Supreme Court has said repeatedly. The ADM case cites other, and I didn't get into those, but other cases involving slips and falls on Snow and Ice, if you're on premises. And that's what the Comfort Doctrine says. Well, okay, if we just assume, okay, that it's a hazardous condition, right, on premises, okay, and she's exposed to this hazardous condition because of her employment, wouldn't that be the requirement? That's all it is. That's it. And what about her employment requires her to expose herself to this hazardous condition, going to get a cup of coffee? Well, she is not required by her employment to get a cup of coffee. That's personal comfort. But she is required by her employment to come and go through that walk on the property. But doesn't the purpose of her being exposed to that hazardous condition at that time and place have to be employment related? No, it does not have to be. Why? Because of the personal comfort doctrine. And also because she was coming to or going from work. And there's no logical distinction between leaving because I want to go home as opposed to I want to go get coffee, because, you know, I'm going home for personal comfort, really, right? I mean, however you approach that, I'm leaving because I want to go back home and get out of the building. But there is a distinction. Going to and coming from work is something an individual has to do. Going out to get a cup of coffee is not something a person has to do. I go back to Fry's case or Bray's case, however it's pronounced, that the injury must be due to demands of the employment. The demands of the employment is coming and going to and from work. Going out in the snow and ice or whatever it was, a dangerous condition, is a personal choice outside of demands of employment. That's the distinction. You have to throw away the personal comfort doctrine to get there. Well, what's personal? Give us an example of the personal comfort. Well, personal comfort is going out. For instance, the Eagle case talks about it. But the Eagle case is one where the guy's on lunch break, on premises, playing frisbee. And they said that's personal comfort. The court in some of these cases said getting fresh air is. The Circuit City case, I think it is called, is the one where the guy's bumping the machine, right, to get something out of the. Yeah, it's rather infamous by the Chamber, yes. Yeah, it's kind of an unusual. It's a weird case. I grant that. But that's what it is. He was, again, on the premises trying to do something during the break. I'm wrestling with the outer bounds of this personal comfort doctrine. Are you saying that if a person, every time they take a 15-minute break, they go out in the snow and they come and go for whatever purpose, there's liability automatically because the person's leaving every time the premises for personal comfort. I want to get a sandwich. I want to get a cup of coffee. I want to do whatever. Where are the bounds of this personal comfort doctrine? The personal comfort doctrine says the most important thing you look at when you're talking about these types of claims is where it occurred. Is it on premises or off? And this wasn't on premises. She had left the building, or we conceded it was a non-work-related purpose. Getting coffee is not a work-related purpose, correct? Unless you throw out the personal comfort doctrine, yes. But she was on premises. What do you define as the premises? Beg your pardon? What do you define as the premises? Well, the only evidence in the case was it was on the premises. Well, no, no. On the premises is a conclusion. Tell me what it is, this area, that you say is included within the premises. I don't know what it is. Why is the sidewalk part of the premises? The city of Springfield owns, I mean the whole city is the city of Springfield. Yeah, I know. So if your theory is just because the property was owned by the city of Chicago, then it applies that she tripped and fell two miles away. Yeah, I suppose. So tell me why this sidewalk is part of her employment premises. If you look at the video, she's leaving the building. It is still on the property that is contiguous. I mean, it's surrounded by, she testified it's, you know, the Who owns this walkway? City. Where she works. The city owns the walkway up to the building? Yeah. She's working at the city building.  She's leaving. She's leaving the building. She's maybe, I don't know how many, maybe 15, 20 feet up, you know, outside the building. It's not very far out. She doesn't get to the sidewalk. Well, Justice Hoffman's question is right on. Okay. She doesn't get to the sidewalk, right? Okay. To the general public. If it was a private building, okay, an employer private building, normally from the sidewalk, the walkway to the building is property owned by the owner of the building. Right, and that's how this is. That's what this is. So if you look at the sidewalk. Well, I know what it is, but is that the premises where she works? Yeah. Okay. Yeah, absolutely. She's walking out of the building. She walks straight out of the building. She doesn't get to the general sidewalk. Right. She's walking out of the building straight out. The general sidewalk would not be premises. Beg your pardon? Right, I agree with you. I agree with you on that. If she got to the general. I circumscribed it to what you say the premises. If she got to what I call the general sidewalk surrounding the building. I would say. She left the premises. She left the premises. She didn't do this. Your time is up. Sorry, I didn't see that. Thank you. Thank you. Mr. O'Brien, would you please begin by explaining what you know or believe to be the property of the employment? The area where this took place, and thank you, I am Dennis O'Brien. I represent the City of Springfield. Pardon me. It's about eight blocks to the east of here is where this occurred. Sangamon County Courthouse, right? Well, it's right by the Sangamon County Courthouse. It's Kitty Corner. The old one. It's the old one, correct. Well, actually, this is in the old city hall. Municipal Center East. Municipal Center West is the old county building. We're in the east building. And that building has two entrances. And the public entrance, which this woman was using, which has stairs that go down to an area that's not the premises. There is a plaza immediately to the west of this building. It's a public plaza. And I believe it's the Nelson Howarth Plaza. It has a fountain, et cetera. Who is Nelson Howarth? He was a mayor of Springfield. Oh, okay. But that's not important now. Because they sell airplanes, right? But she is on the plaza. This sidewalk is on the plaza. She doesn't work in the plaza. This is not the premises. She works in the Municipal Center East, which is also where there's coffee available. She comes and she does not enter through or exit work through these doors. There is a door on the east side of the building. You're representing to us that she did not fall on the, quote, unquote, employer's premises. Is that what you're saying? Correct. She works in this building. And it's inference, the steps coming out of it would probably be premises. But there's a plaza, a public plaza that the public uses. And she's not exposed to any greater risk. She hasn't made it to the street yet because there's a plaza there. And she's on her way to the street when she took this fall. And you can see her on the video walking along the sidewalk in the plaza when she falls. All right. That is obviously an issue. But the other issue is he's arguing the personal comfort doctrine. Besides the issue of where it took place, would the personal comfort doctrine provide them the relief that they want here? I don't believe so. He quoted four cases that he said would do that. The Moses Harvey case, that was a parking lot case, assigned parking exclusively for employees. It's not a general public area. They had to go park there. They had to park there. We have a parking lot that's a ramp. She parks in that. If she had fallen there, no problem. That would have been compensable. There's an entrance she can go to from that parking lot. That's the one she's required to come in. It would have been on that sidewalk. That's another plaza, by the way. On that one, because that's the area she has to come in, that could be required. But Moses, it's a parking lot, required parking. Archer Daniels Midland, she was coming to a gate. It was not a general public gate. It was a vendors-only gate. Public can't come in there. And that's where she fell on snow and ice. She was going into work. It's required she get to work. I think we're missing his point. His purpose for citing those cases was to suggest that a slip and fall on natural accumulations of snow and ice, if on the employer's premises, is compensable. That takes care of the slip and fall on natural accumulation of snow and ice. It has to be the personal comfort doctrine that covers her vis-a-vis on the You want to argue to and from work, to and from work. That's irrelevant. The only reason these cases are cited is snow and ice can be the hazard. So what about the personal comfort doctrine? Then I would suggest you look at the Walmart Stores case that he cited. The Walmart Stores case is an employee who fell on the ice in the parking lot at work who was going to lunch. Personal comfort? Non-compensable. Why? Because of the fact it was also a general public and she was going on a personal errand. She was leaving the premises, but she was in a general public area. The facts are very analogous to this case. Absolutely. So your argument is, your argument has to attack his thesis of personal comfort, not his thesis of slip and fall on ice and snow. I believe I win either way. I think you lose on the ice and snow. Get to the personal comfort. Slip and fall on ice and snow can be a hazard that leads to compensability. ADM says so, that's the Supreme Court. We're not going to argue with that. So the question becomes, is she covered under the personal comfort doctrine? Did it occur on the employment premises? I say no, that she is now in a public plaza. She has left the building. And I also say no because Eagle Discount says that when an employee voluntarily and in an unexpected manner exposes himself to a risk outside the exercise of his duties, and this is not one of her duties, it's not compensable. Well, you're saying that Walmart covers it anyway because she fell on Walmart's premises, so that's off the table. Correct. Where was she going when she fell in the Walmart case? Lunch. Personal comfort, right? Correct. And they held it was non-compensable. Correct. We'll have to ask Mr. Ackerman why that case doesn't control, but that's not for you to answer now. Was playing Frisbee part of the employer's, the employee's duties in Eagle Discount? If I remember the facts correctly, if I remember the facts correctly, no, they were not. But the supervisor acquiesced in the activity, and that is what made that different. Was beating up on a vending machine part of the employee's duties in Circuit City Stores? It was the vending machine in their break room. And that's why everything he cites is distinguishable. You don't understand. The distinguishing factor is was it on the premises or wasn't it? Correct. And I'm telling you that it is not. It's outside the building in a public plaza where the general public is also using it. I mean, we're beating a dead horse here. I mean, let's be blunt. If you're on a public plaza, how could you be on the employer's premises, correct? Correct. It's one way or the other. There's no in-between. Correct. Any further questions? I don't see any. Thank you. Then I'm happy to get out before the OOI gets on us. You did it. Yes. Counselor, you may reply. Okay. Thanks. Mr. Edgerman, can a public plaza be the employer's premises? I mean, this is, can it be? Yes, one. I think it can be. Two. How is that? Well, this was, she's walking, for one thing, the whole plaza was covered in snow. She's walking out the. We know that. Right. I mean, so she's. How is that the employer's premises? If the public is on the plaza, how is that an employer's premises? Because it's the only, I mean, how would it not be the employer's premises? I mean, what are you going to say? Anything that is a public building is not employee premises? I have a question. Yeah. Is this walkway from the building to the public sidewalk, do we know that it's associated with the building, or is it past the sidewalk or past the walkway to the sidewalk and into the plaza? And is there a distinction between the two, the walkway from the building to the sidewalk or entering the plaza? No, it's literally, as you walk out the door, it's the only way you can get out the door. Right. And you can't, I mean, you're not on what I would call the general public property. If you look at the video, it's pretty clear that that's what it is. Your opponent says she fell in a plaza. What? You say she fell on a sidewalk. Which is it, sidewalk or plaza? Well, he calls it a plaza. I mean, it's a sidewalk that, to me, is leading out into the plaza. And, you know, I mean, it is kind of the plaza. It's a sidewalk that leads to the plaza, or it's a sidewalk that's in the plaza? Would it be fair to say this, it's a sidewalk that leads from the building, or it's a walkway that leads from the building to the public sidewalk, but sort of meanders into the plaza as well as part of the concrete or cement? Yeah, it goes into the plaza. Okay, so we have a building, we have a walkway that goes into a plaza, which is apparently open to the public. Yep. And then there must be some walkway from the plaza to the sidewalk along the street. Correct, yep. Okay, now the entrance to the building, is that public? Yeah. So the public has any business in that building will use, theoretically, go along the sidewalk along the street, go into a walkway, go through a plaza to a walkway to the building. To this thing, yeah. So the public's exposed to all this. Correct. The public is, just like in Bryce, like the lady that was going back to her work at the courts. Let's talk about Walmart. Let's talk about Walmart. Oh, yeah. I'll talk about Walmart. It's very analogous, isn't it? Yeah, it's the weird case, right? It's the unusual. It really is. I mean, you look at that case in the context of these things, and it is, to me, I think it's wrongly decided. Okay, because it stands for the proposition that she's leaving, as he represented, for lunch, correct? I don't remember. I was thinking she was leaving at the end of the day. All right, let's assume she's leaving for lunch. Okay. As opposed to leaving for coffee. That would be under, ostensibly, that would be under the personal comfort doctrine, right? Right, personal comfort. And yet in Walmart, the claimant was found, the accident was found to be non-compensable, correct? Correct. So doesn't that control the situation? Well, I mean, if you accept that case, it does. But ADM is the one that, I mean, all the cases I cite say, if it's an on-premises fall, it is whether or not it's a condition of the premises, and it's compensable. Walmart is the weird case. And there was two dissents and two concurrences, and if you look at it, it's really strange. She said there was testimony. When was Walmart decided, you know? When? Yes. If you give me a second. Sorry. It could have been decided. It could be fresh authority from 1950, for all we know. No, that's not true. It's 2001. 2001? Yeah, it's a 2001 case. But so there was also testimony in that case that she did it at home, which to me, I don't know why this case came up, because it's very strange, and it doesn't apply the right test. It does not apply the personal comfort doctrine, and it does not apply the on-premises test, which is Walmart. Walmart, you're saying. Walmart, right. Okay, so if we're on a personal comfort errand, so to speak. Right, lunch. Okay. Coffee. Yep. Yeah. Assume that. Yep. Where does compensability end? When you leave the premises? If you leave the premises, you apply the increased risk to the general public test. So really, this case is really determined by what are the premises of the employer? Yeah, the premises is important. Important? You just said it's the lunchroom, isn't it? Yeah, that's what I'm saying. It's important. Assume it was personal comfort. If you guys find this is off-premises, I think I'm toast. It's on-premises. The only evidence in there is my client said, this is on-premises, and if you look at the video, it's on-premises. So I don't think there's a question of that. Nobody came out from the city and said, well, this is really the general public, right? And nobody testified like that. And Bryce says and Souter says, both of those are public buildings, right, and they're right outside. And none of those cases said, well, if it's outside the public building, plaintiff's toast. We have one more question near the red light. Sure. So the record, you're arguing the record is that the only evidence is that the testimony was that your client was on the premises and that was unrebutted by the city? Correct. That's absolutely true. Well, we have a picture of where she fell. Video. Yes. Of her falling. So. Yep. Good. Thank you, counsel. Thank you. Thank you, counsel Bullock. This matter will be taken and revised back to witness position.